UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAIKH ENTERPRISES, INC. | § | |
| d/b/a Z S FOOD MART (A/K/A | § | |
| NAGHMA B. SHAIKH & BASHIR | § | |
| SHAIKH) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil No. 4:20-cv-03411 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

---

### DEFENDANT UNITED STATES OF AMERICA'S
### MOTION FOR SUMMARY JUDGMENT

The United States of America ("Defendant") respectfully moves this Court for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiff's lawsuit challenges the decision by the United States Department of Agriculture (USDA), Food and Nutrition Service ("FNS"), to permanently disqualify Plaintiff from the Supplemental Nutrition Assistance Program ("SNAP"). The United States contends that there is no genuine issue of material fact and that the United States is entitled to judgment as a matter of law.

## <u>TABLE OF CONTENTS</u>

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT………..…………….

TABLE OF CONTENTS……………...……………………………………...i

TABLE OF AUTHORITIES.......................................................................ii

    I.   Statement of the Case……………...…………………...…………………1

    II.  Summary of Facts ........................................................................... 2

    III. Standard of Review………………………………………………….4

    IV.  Summary of the Argument……………………………………………6

    V. Law and Argument ....................................................................... 7

       A. Defendant made a proper finding that Plaintiff engaged in trafficking….…7

       B. The penalty imposed by Defendant is neither arbitrary nor capricious……12

    VI. Conclusion ................................................................................ 17

   Certificate of Service............................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Abdeelkhalik v. United States*, Case No. 1:94-cv-05809, 1996 WL 41234 (N.D. Ill. Jan. 30, 1996)…………………………………………………………………......11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)………………………………5

*Bordelon v. Block*, 810 F.2d 468 (5th Cir.1986)……………………………………....17

*Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536 (5th Cir. 2005)………....6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………………………..4-6

*Goldstein v. United States*, 9 F.3d 521, 523-24 (6th Cir. 1993)……...…………..8, 11

*Goodman v. United States*, 518 F.2d 505 (5th Cir. 1975)……………………………5

*Hanif v. United States*, Case No. 4:15-cv-02718, 2017 WL 447465 (S.D. Tex. Feb. 2, 2017)……………………………………………………………………………….12, 17

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007)…………………………………7

*Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000)…………...9, 11

*Kim v. United States*, 121 F.3d 1269 (9th Cir. 1997)…………………………..11 n. 4

*Kingway Supermarkets Inc. v. United States*, 545 F. Supp. 2d 613 (S.D. Tex. 2008)…………………………………………………………………..…..8-9, 11

*Malagon de Fuentes v. Gonzales*, 462 F.3d 498 (5th Cir. 2006)…………...……….11

*Meridia v. United States*, Case No. 4:13-cv-01124, 2016 WL 7736585 (S.D. Tex. Aug. 16, 2016)………………………………………………….....………..8, 11-12

*Razzak v. United States*, Case No. A-13-CA-207-SS, 2014 WL 582079 (W.D. Tex. 2014)……………………………………………….…….……………....11-12

*Redmond v. United States*, 507 F.2d 1007 (5th Cir. 1975)……………………….…..5

*Saleh v. United States*, Case No. 02-C-8846, 2004 WL 549457 (N.D. Ill. Mar. 19, 2004)…………………………………………………………………………9

*Stauffer v. Gearhart*, 741 F.3d 574 (5th Cir. 2014)……………………………....…4-5, 7

*Traficanti v. United States*, 227 F.3d 170 (4th Cir. 2000)………………...……11 n. 4

## Statutes

7 U.S.C. § 2021(a)(2)………………………………………………………...…8

7 U.S.C. § 2021(b)(3)(B)………………………………………………...…2, 8, 12-15

7 U.S.C. § 2023………………………………………………...……………..1, 5

## Regulations

7 C.F.R. § 271.2…………………………………………………………1 n. 2, 7

7 C.F.R. § 278.6(a)……………………………………………………...…8

7 C.F.R. § 278.6(e)(1)…………………………………………...……12, 15

7 C.F.R. § 278.6(f)(1)………………………………………………16

7 C.F.R. § 278.6(i)………………………………………………....…6, 13-14, 16

7 C.F.R. § 279.7………………………………………………………………1

7 C.F.R. § 279.10………………………………………………..………………1

## Rules

Fed. R. Civ. P. 56………………………………...…………………………....4, 6

# I.  Statement of the Case

Plaintiff filed this action under 7 C.F.R. §§ 279.7 & 279.10(d), and 7 U.S.C. § 2023, to challenge the FNS decision to permanently disqualify Plaintiff from participating as an authorized retailer in the SNAP. (A.R. 301-307).[1] Defendant found that Plaintiff illegally trafficked food stamp benefits using the Electronic Benefits Transfer ("EBT") system. (A.R. 308-322).[2]  Plaintiff has exhausted all administrative remedies.

In a series of EBT transactions, Plaintiff illegally redeemed food stamp benefits using electronic benefits transaction cards. (A.R. 313-318). As a result of these illegal transactions, food stamp benefits were improperly paid to Plaintiff by the Defendant.

---

[1] Included as Exhibits 1 through 13 to this motion for summary judgment is the Administrative Record (A.R.), which will be cited throughout this motion according to its page numbering, A.R. 1 through A.R. 380.  The A.R. is divided into 13 exhibits in order to meet the size limitations of the ECF filing system.  Additionally, the A.R. has been redacted.  *See* Fed. R. Civ. P. 5.2.  Exhibit 14 is the agency's Declaration of Completeness of Record of Proceedings Before Administrative Review Officer and is a certification of the entire A.R..

[2] Food Stamp Act regulations define trafficking to mean the buying or selling of food stamp benefits for cash or consideration other than eligible food. 7 C.F.R. § 271.2. In Texas, food stamp benefits are obtained by eligible households using the Lone Star Card, an electronic benefits transfer card. An authorized user of the Lone Star Card may use the card to pay for eligible food purchased from an authorized retail food store. At the checkout counter, the authorized user inserts the Lone Star Card into a point-of-sale device and enters the household's personal identification number. The retailer enters the amount of eligible food purchased and transmits the entered information to a central data base. Once the purchase is authorized by the system, the purchase amount is debited from the recipient's account and credited to the retailer's system account. During system settlement, funds are electronically transferred from the food stamp program's account at the U. S. Treasury to the retailer's depository account.

1

(A.R. 308-322). If personnel of the store commit trafficking, 7 U.S.C. § 2021(b)(3)(B) provides that Defendant shall permanently disqualify the store.

## II.  Statement of Facts

Plaintiff was authorized to participate in the SNAP on January 31, 2019. (A.R. 320). Plaintiff was classified as a convenience store during the review period of November 2019 through April 2020. (A.R. 320-321). On September 28, 2019, Defendant's contractor visited the store to observe the store's operation, stock, and facilities, took photographs of the store and drafted a report of the visit. (A.R. 141-172). Plaintiff's store has approximately 840 square feet, with 21 square feet of storage outside of public view, one cash register with an EBT "Point of Sale" device, and a small check-out counter area surrounded by a Plexiglass barrier with limited checkout counter space. (A.R. 141-142). The store had no shopping carts or hand-held baskets available for customer use.  The store also had no fresh or frozen meats, poultry, or seafood.  (A.R. 141-142).

On June 12, 2020, Defendant sent a charge letter with exhibits (A.R. 273-280) to Plaintiff stating that it was in violation of the SNAP regulations based on EBT transactions that "establish clear and repetitive patterns of unusual, irregular, and inexplicable SNAP activity." (A.R. 273).  Defendant charged Plaintiff with trafficking based on two categories of transactions spanning from November 2019 through April 2020.   The first category of transactions was multiple transactions made from individual benefit accounts in unusually short time frames (and Defendant attached a

2

listing of the transactions).    (A.R. 273 & 276-278).    The second category of transactions was a series of excessively large purchases made from recipients' accounts (and Defendant attached a listing of the transactions.) (A.R. 273 & 279-280). Several EBT transactions were made from the accounts of individual SNAP households, and such transactions were unusual relative to the store's characteristics and food stock. (A.R. 273).  The letter also informed Plaintiff that, under certain conditions, Defendant could impose a civil money penalty ("CMP") in lieu of permanent disqualification. (*Id.*).

Plaintiff replied to the charge letter on June 22, 2020. (A.R. 283-292). Plaintiff did not dispute nor offer any evidence to dispute that the trafficking occurred, but did state that Plaintiff had no SNAP violations prior to the charge letter.  (A.R. 284). Plaintiff requested a CMP in lieu of a permanent disqualification.

On July 6, 2020, after considering Plaintiff's reply, Defendant found that the violations stated in the charge letter occurred and imposed a permanent disqualification. (A.R. 297-298).  Defendant considered Plaintiff's request for a CMP in lieu of a permanent disqualification. (A.R. 297). Defendant found that Plaintiff was not eligible for a CMP because Plaintiff failed to submit sufficient evidence to demonstrate that Plaintiff established and implemented an effective compliance policy to prevent violations of the SNAP.  (*Id.*).  On July 17, 2020, Plaintiff requested administrative review of the decision to permanently disqualify Plaintiff from participating in the SNAP. (A.R. 301-303). On July 27, 2020, Defendant granted

Plaintiff's request for administrative review, and notified Plaintiff that Plaintiff could submit any additional information or evidence to be considered.  (A.R. 305).

On August 17, 2020, Plaintiff submitted additional information or evidence. (A.R. 308-314).  Plaintiff once against requested a CMP and noted that "[t]he owner of ZS Food Mart was not aware of, did not benefit from, and was not in any way involved in the conduct and/or approval of trafficking violations."   (A.R. 308). Plaintiff included sample store receipts for SNAP transactions (A.R. 310-311) and photographs of the store and surrounding area (A.R. 312-314).

On September 2, 2020, Defendant issued the Final Agency Decision, finding that there was sufficient evidence to support a finding that Plaintiffs' permanent disqualification from participating in SNAP was properly imposed against Plaintiff. (A.R. 315-329).

On November 23, 2020, Plaintiff filed this suit seeking judicial review of the Final Agency Decision.  *See* Plaintiff's Compl. Dkt. No. 1.  Plaintiff seeks a *de novo* review of the agency's action.  *Id.* ¶ 27.  Plaintiff alleged that Defendant violated Plaintiff's due process rights.  *Id*. ¶ 28.  Additionally, Plaintiff alleged that if "trial *de novo* is not awarded, the penalty imposed was arbitrary and capricious."  *Id*. ¶ 30.

## III.  Standard of Review

Summary judgment is proper under Fed. R. Civ. P. 56(a) if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986), *Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014). In ruling on a motion for summary judgment, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings: it must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *See Celotex*, 477 U.S. at 324. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a factfinder to return a verdict for that party. *See Anderson*, 477 U.S. at 249.

Pursuant to 7 U.S.C. § 2023(a)(13), courts conduct a *de novo* review of administrative actions concerning the eligibility of stores to participate in the food stamp program, including SNAP disqualification challenges. *See Redmond v. United States*, 507 F.2d 1007 (5th Cir. 1975). This *de novo* standard applies to reviewing whether any violations occurred. As a separate matter, courts may also review the sanction imposed, but under an arbitrary and capricious standard. *See Goodman v. United States*, 518 F.2d 505, 509, 512 (5th Cir. 1975) (citations omitted). A sanction is arbitrary and capricious if unwarranted in law or unjustified in fact. *Id.* (citations omitted).

Plaintiff has the burden of proof under either of these standards by a preponderance of the evidence. *See Redmond*, 507 F.2d at 1012, *Goodman* 518 F.2d at 507. As Plaintiff has the burden of proof in this matter and is the nonmoving party

5

in this motion, Defendant may satisfy its burden under Fed. Civ. P. 56 by "pointing out to the district court …that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Defendant must demonstrate the absence of a genuine issue of material fact but is not required to negate the elements of Plaintiff's case.  *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

### IV.  Summary of the Argument

There is no genuine issue of material fact supporting Plaintiff's allegations and Defendant is entitled to summary judgment as a matter of law.

Defendant properly found that Plaintiff illegally trafficked food stamp benefits based upon the EBT transaction data set forth in the charge letter.  7 U.S.C. § 2021(a)(2) and case law permit the agency to rely on EBT transaction data for a finding of trafficking.  Although Plaintiff requested a *de novo* review of this finding in the Complaint, Plaintiff never disputed that trafficking occurred in the administrative review before the Defendant.  Additionally, Plaintiff has offered no evidence to dispute that finding after filing the Complaint.

Defendant's decision to impose a permanent disqualification was supported in law and fact and was neither arbitrary nor capricious.  Plaintiff requested a CMP in lieu of the disqualification.  However, Plaintiff failed to prove that it meets the criteria for a CMP set forth in 7 C.F.R. § 278.6(i).  To that end, Defendant found that Plaintiff failed to submit evidence that Plaintiff established and implemented an effective compliance policy and prevention program.  Although Plaintiff asserted that it did

6

have an effective compliance policy and prevention program, it never offered documentation of such in its correspondence with the agency. Plaintiff also never offered any evidence of such after filing the Complaint. Defendant correctly followed the regulations in imposing the permanent disqualification.

## V.  Law and Argument

The A.R. filed in conjunction with this motion for summary judgment (as Exhibits 1 to 13) sets forth the basis for the agency's finding that Plaintiff engaged in trafficking and the penalty imposed. The A.R. establishes that summary judgment for Defendant is appropriate in this case. The finding that Plaintiff engaged in trafficking is proper and the permanent disqualification is neither arbitrary nor capricious. Thus, the A.R. demonstrates the absence of a genuine issue of material fact. As such, Plaintiff as the nonmovant cannot rely on the allegations from the Complaint but must respond with evidence showing a genuine factual dispute. *See Stauffer*, 741 F.3d at 581 (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). Plaintiff is unable to do so, and summary judgment is thus appropriate.

### A.  Defendant made a proper finding that Plaintiff engaged in trafficking

Plaintiff was permanently disqualified because Plaintiff trafficked in SNAP benefits. The applicable regulation defines "trafficking" as "[t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food . . . ." 7 C.F.R. § 271.2.

Pursuant to 7 U.S.C. § 2021(b)(3)(B), the penalty for trafficking is a permanent disqualification. *See Meridia v. United States*, Case No. 4:13-cv-01124, 2016 WL 7736585 at *3 (S.D. Tex. Aug. 16, 2016). "The regulations have no requirement that a store owner must receive a warning, demonstrate intention to violate the regulations, or benefit from the trafficking." *Id.* (citing *Goldstein v. United States*, 9 F.3d 521, 523-24 (6th Cir. 1993)). The agency is not limited to conducting compliance visits to enforce anti-trafficking laws. It can rely on an analysis of EBT transactions. *See* 7 U.S.C. § 2021(a)(2) (evidence "may include facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system"); *see also* 7 C.F.R. § 278.6(a).

In this case, Defendant relied on EBT transaction data from the months of November 2019 through April of 2020. (A.R. 273, 276-280). Plaintiff, neither in its correspondence with the agency between the charge letter and the Final Agency Decision, nor after filing the Complaint with this Court, has offered any evidence to argue that the agency's reliance on the EBT transaction data was impermissible.

Not only does 7 U.S.C. § 2021(a)(2) allow as evidence EBT transaction data, but courts have consistently upheld the disqualification of a store based on an analysis of EBT data rather than an in-store compliance visit. *See Meridia*, 2016 WL 7736585 at *5, *Kingway Supermarkets Inc. v. United States*, 545 F. Supp. 2d 613, 617-618 (S.D.

8

Tex. 2008), *Saleh v. United States*, Case No. 02-C-8846, 2004 WL 549457 at *1-3 (N.D. Ill. Mar. 19, 2004), *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000).

In the Final Agency Decision, the review officer considered whether the EBT data established by a preponderance of the evidence that the questionable transactions were the result of trafficking.  (A.R. 319).  The review officer also noted that the agency previously conducted a store visit on September 28, 2019, to observe the nature and scope of Plaintiff's store and operations.  (A.R. 321).[3]  The review officer concluded that Plaintiff's store was a typical convenience store "where households normally purchase a limited number of items," and the stock "was generally of a low dollar value…." (A.R. 322).

The first category of EBT transactions from the charge letter (A.R. 273, 276-278) showed "21 sets of transactions (53 total transactions) totaling $2,106.57 in SNAP benefits…conducted by 17 different SNAP households."  (A.R. 322). "Multiple transactions conducted by the same household account within a short period of time is a method which violating stores use to avoid single high dollar transactions that cannot be supported by a retailer's inventory and structure." (A.R. 322).  These transactions are indicative of trafficking because they "display characteristics of use

---

[3] The A.R. contains the report of this store visit.  (A.R. 141-172).

9

inconsistent with the nature and extent of the [Plaintiff's] stock and facilities."  (A.R. 322).

The second category of EBT transactions from the charge letter (A.R. 273, 279-280) "documents 110 SNAP transactions, as large as $89.41, that total $5,171.80…," which "are not consistent with the store's observed characteristics and food inventory."  (A.R. 322-323).  The review officer noted that the agency compared Plaintiff's SNAP transaction data with two other authorized stores within a .61 mile radius and found that Plaintiff had a significantly higher number of flagged transactions, and Plaintiff's average transaction amount was also significantly higher. (A.R. 324).  Moreover, the agency also compared three SNAP households identified in the charge letter to analyze shopping patterns at Plaintiff's store with other SNAP stores within commuting range and with better stocked stores.  (A.R. 324).  That analysis revealed that the households "conducted excessively large transactions" at Plaintiff's store "within 24 hours of shopping at the larger stores where they conducted much smaller SNAP purchases."  (A.R. 324).

While Plaintiff did submit to the agency receipts of SNAP transactions (A.R. 310-311) and did assert to the agency that Plaintiff had no warnings or violations prior to the charge letter (A.R. 284), those matters do not dispute that trafficking occurred. Moreover, as the receipts show and as the review officer summarized, all of the receipts fall outside of the charged timeframe.  (A.R. 310-311, 320).  Additionally, as

10

already noted, the "regulations have no requirement that a store owner must receive a warning." *Meridia*, 2016 WL 7736585 at *3 (citing *Goldstein*, 9 F.3d at 523-24). Likewise, 7 U.S.C. § 2021(a) punishes violations committed by a store and it is irrelevant whether the store owner engaged in trafficking. *See Abdeelkhalik v. United States*, Case No. 1:94-cv-05809, 1996 WL 41234 at *5 (N.D. Ill. Jan. 30, 1996).[4]

Thus, the agency properly relied upon the EBT transaction data, where "'the Plaintiff has failed to rebut or raise material issues of fact as to the logical inferences from the data.'" *See Kingway*, 545 F. Supp. 2d at 617 (citing *Kahin*, 101 F. Supp. 2d at 1304). The evidence to be considered is found in the A.R., and Plaintiff has offered no other evidence despite Plaintiff having the burden of proof. The review officer properly found that trafficking occurred, and there is no genuine issue of material fact in that regard.

As a side note, Plaintiff loosely alleged in the Complaint that Defendant violated Plaintiff's due process rights. Plaintiff's Compl. ¶ 28. SNAP regulations need only pass rational basis scrutiny. *See Razzak v. United States*, Case No. A-13-CA-207-SS, 2014 WL 582079, at *5 (W.D. Tex. 2014) (citing *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006)). Plaintiff only alleges a conclusion and does not

---

[4] Similarly, a permanent disqualification is appropriate even in situations where the store owner is completely innocent (i.e., the store owner apparently did not know about the purchases of food stamps, did not participate in those purchases, and did not benefit from those purchases). *See, e.g.*, *Kim v. United States*, 121 F.3d 1269 (9th Cir. 1997), *Traficanti v. United States*, 227 F.3d 170 (4th Cir. 2000).

address in the Complaint how any due process rights were allegedly violated. Additionally, Plaintiff has offered no evidence to support this allegation.

Courts have held that the SNAP disqualification process complies with substantive due process. *See Razzak*, 2014 WL 582079 at *5; *see also Hanif v. United States*, Case No. 4:15-cv-02718, 2017 WL 447465 at *7 (S.D. Tex. Feb. 2, 2017). Likewise, the applicable statute and regulations in this case provide for a *de novo* review, and courts have held this complies with procedural due process. *Id*. (citations omitted). Thus, there is no genuine issue of material fact in this regard, and Plaintiff's due process claim should fail as a matter of law.

## B. The penalty imposed by Defendant is neither arbitrary nor capricious

In the Complaint, Plaintiff alleges that the decision to impose a permanent disqualification was arbitrary and capricious. Plaintiff's Compl. ¶ 30. The agency's decision to impose a permanent disqualification was supported in law and fact and was neither arbitrary nor capricious.

The penalty for trafficking is a permanent disqualification. *See Meridia*, 2016 WL 7736585 at *3. This penalty is provided for in the statute, which provides that a store shall be permanently disqualified if the store engages in trafficking. 7 U.S.C. § 2021(b)(3)(B); *see also* 7 C.F.R. § 278.6(e)(1). The charge letter properly notified Plaintiff that the sanction for trafficking is permanent disqualification, citing 7 C.F.R. § 278.6(e)(1). (A.R. 273). Additionally, the charge letter notified Plaintiff that it could

request a CMP in lieu of permanent disqualification and that 7 C.F.R. § 278.6(i) listed

the criteria Plaintiff must prove to be considered for a CMP.  (A.R. 273).

7 U.S.C. § 2021(b)(3)(B) further provides that the agency has "the discretion to

impose a civil penalty …in lieu of disqualification …if …there is *substantial evidence*

that such store or food concern had an effective policy and program in effect to prevent

violations of the chapter and the regulations." (*emphasis added*).  7 C.F.R. § 278.6(i)

provides the same, and further provides the criteria that a store must meet:

> Criterion 1. The firm shall have developed an effective compliance policy
> as specified in § 278.6(i)(1); and
>
> Criterion 2. The firm shall establish that both its compliance policy and
> program were in operation at the location where the violation(s) occurred
> prior to the occurrence of violations cited in the charge letter sent to the
> firm; and
>
> Criterion 3. The firm had developed and instituted an effective personnel
> training program as specified in § 278.6(i)(2); and
>
> Criterion 4. Firm ownership was not aware of, did not approve, did not
> benefit from, or was not in any way involved in the conduct or approval
> of trafficking violations; or it is only the first occasion in which a member
> of firm management was aware of, approved, benefited from, or was
> involved in the conduct of any trafficking violations by the firm.

*Id*.  Additionally, 7 C.F.R. § 278.6(i)(1) provides guidance for Criterion 1, compliance

policy standards, including "whether a firm has established an effective policy to

prevent violations, FNS shall consider written and dated statements of firm policy

which reflect a commitment to ensure that the firm is operated in a manner consistent

with this part 278 of current FSP regulations and current FSP policy on the proper acceptance and handling of food coupons." 7 C.F.R. § 278.6(i)(2) provides guidance for Criterion 3, compliance training program standards, including the requirement of submitting records of dates of employment of store personnel, records of training curricula and records of dates of training.

Plaintiff specifically requested a CMP in lieu of a permanent disqualification in its response to the charge letter.  (A.R. 283-285).   In the Final Agency Decision, the review officer sustained the decision to impose a permanent disqualification, finding that Plaintiff provided no supporting documentation of its request for a CMP.  (A.R. 327).  7 U.S.C. § 2021(b)(3)(B) and 7 C.F.R. § 278.6(i) place the burden upon Plaintiff to provide substantial evidence that it meets the four criterion.  Plaintiff failed to do so before the agency, despite multiple opportunities to do so.

In its response to the charge letter, Plaintiff argued that it met the criteria for a CMP, alleging that Plaintiff had been in business since 2003 and never had any warnings or violations prior to the charge letter.  (A.R. 284).  Plaintiff also alleged that since the beginning of its operations it had trained its employees regarding SNAP benefits.  (A.R. 284).   Finally, Plaintiff alleged that its store is located in an economically disadvantaged area and there are no other stores within a one-mile radius that accept SNAP benefits and attached photos of the store and surrounding area to support this contention.  (A.R. 284, 288-290).

It should also be noted that Plaintiff's counsel argued to the agency, in addition to a CMP, that Plaintiff should only be disqualified for a year at the most.  (A.R. 285). However, this argument is foreclosed by the law.  As already noted, the penalty for trafficking is permanent disqualification. 7 U.S.C. § 2021(b)(3)(B); *see also* 7 C.F.R. § 278.6(e)(1).  The review officer also reached this conclusion.  (A.R. 326).

The agency then notified Plaintiff that it did not qualify for a CMP because Plaintiff failed to submit evidence that Plaintiff established and implemented an effective compliance policy and prevention program.[5]  (A.R. 297).  In the letter requesting administrative review of that decision, Plaintiff's counsel asserted that Plaintiff did in fact have an effective compliance policy and prevention program in place and would provide supporting information at a later date.  (A.R. 301-302).  In a subsequent letter providing additional information for consideration, Plaintiff's counsel noted:

> [Plaintiff] did in fact have such policies and programs in place.  All employees hired by the business were required  to meet with Mr. Shaikh prior to starting  their first shift.  At that meeting, Mr. Shaikh personally discussed the SNAP regulations and guidelines, as provided by the Food and Nutrition Service (FNS).

---

[5] Prior to this letter, the Retail Operations Division (a component of the agency) evaluated Plaintiff's response, addressed that response under all four criterion, and recommended that the permanent disqualification be imposed.  (A.R. 293-296).

15

(A.R. 308).   Plaintiff provided *no documentation* in support of this assertion. (*emphasis added*).   The only additional documents provided were receipts and photographs of the store and surrounding area.  (A.R. 310-314).

Plaintiff's documentation of photographs of the store and surrounding area goes to an argument of hardship to SNAP households in the area.  Not to be confused with the CMP in lieu of permanent disqualification contemplated by 7 C.F.R. § 278.6(i), the regulation separately contemplates for a civil penalty in cases of hardship to SNAP households.  Pursuant to 7 C.F.R. § 278.6(f), a CMP can be imposed in lieu of a disqualification in cases of hardship to SNAP households in the area, but *not* in cases of a *permanent disqualification*.   (*emphasis added*).   Thus, Plaintiff's hardship argument is foreclosed by law and the review officer correctly made that finding. (A.R. 326).  Thus, Plaintiff's request for a CMP is limited to the requirements set forth in 7 C.F.R. § 278.6(i).

7 C.F.R. § 278.6(i) requires Plaintiff to provide "substantial evidence" that it meets all of the criteria.  Plaintiff offered no evidence.  Plaintiff's counsel's statements in correspondence that Plaintiff had a compliance program is not evidence.   The review officer correctly held that Plaintiff provided no supporting documentation of its request for a CMP.  (A.R. 327).

The agency followed the laws and regulations applicable to permanent disqualifications from the SNAP program, including requests for a CMP.  The agency

applied the facts as set forth in the A.R. to those laws and regulations.  The decision to impose a permanent disqualification was correct based upon those facts applied to the applicable laws and regulations.  As already noted, Plaintiff failed to offer evidence to support its request for a CMP.  *See Hanif*, 2017 WL 447465 at *6 (finding that the retail store did not qualify for a CMP because it never submitted the required information to be considered for such a penalty in lieu of disqualification).  As such, the agency correctly applied the law.  "If an agency action adheres to its internal guidelines, it is not arbitrary and capricious."  *Bordelon v. Block*, 810 F.2d 468, 471 (5th Cir.1986) (citations omitted).

Therefore, the decision to impose a permanent disqualification was neither arbitrary nor capricious, and there is no genuine issue of material fact in that regard.

## VI.  Conclusion

The United States has demonstrated, through its exhibits and memorandum, the absence of genuine issues of material fact. Since there is no genuine issue as to any material fact in this case, the United States' motion for summary judgment against the Plaintiff should be granted as a matter of law.

Respectfully Submitted,

JENNIFER B. LOWERY
Acting United States Attorney

By:   *s/ Chad W. Cowan*
CHAD W. COWAN

17

Assistant United States Attorney
Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
PH: (713) 567-9569, FX: (713) 718-3303
Alabama Bar No. ASB-5272-C54C
Texas Bar No. 24082540
Southern District No. 938890

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I, Chad W. Cowan, do hereby certify that a true and correct copy of this motion

was filed by the CM/ECF system and served upon Plaintiff's counsel on November

30, 2021.

/ s/ **Chad W. Cowan**
CHAD W. COWAN
**Assistant United States Attorney**

18