| | |
|---|---|
| **From:** | UPS Quantum View |
| **To:** | Rojo, Berenice - FNS |
| **Subject:** | UPS Delivery Notification, Tracking Number 1ZA18E032496955130 |
| **Date:** | Thursday, July 9, 2020 7:45:39 AM |



**Hello, your package has been delivered.**

**Delivery Date:**   Thursday, 07/09/2020
**Delivery Time:**   09:41 AM
**Left At:**   FRONT DESK
**Signed by:**   CV

UPS My Choice for home customer

Set Delivery Instructions     Manage Preferences     View Delivery Planner

**USDA/FNS/ROD**

**Tracking Number:**   1ZA18E032496955130

**Ship To:**   CLYDE W BURLESON, P.C.
1533 W. ALABAMA
SUITE 100
HOUSTON, TX 770064105
US

**Number of Packages:**   1
**UPS Service:**   UPS Next Day Air?
**Package Weight:**   0.0 LBS

Download the UPS mobile app

© 2020 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this email. UPS will not receive any reply message.

**A.R. 300**

RECEIVED   JUL 2 4 2020

# CLYDE W. BURLESON, P.C.

1533 W. Alabama, Suite 100
Houston, Texas 77006
Telephone: (713) 526-2226
Facsimile: (713) 526-3787

July 17, 2020

Chief
Administrative Review Branch
USDA, FNS
1320 Braddock Place, 5th Floor
Alexandria, VA 22314
*Via Priority Express Mail*

5987083

| ROD | |
|---|---|
| DETER. | MAILED: 7-6-2020 |
| NOTICE: | REC'D: 7-8-2020 |
| POSTMARK DATE: | 7-7-2020 |
| REQ. REC'D IN ARB: 7-20-2020 | |
| DISQ. TAKEN: FBT | |
| BASIS: | |
| CASE #: C023 0530 | |
| REVIEW OFFICER: LC | |

Timely

RE:     Request for Administrative Review
        ZS FOOD MART
        3719 Lockwood
        Houston, TX 77026

Dear Sir or Madam:

Pursuant to 7 CFR Section 278.6(n) and Part 279 of the Supplemental Nutrition Assistance Program (SNAP) regulations, please accept this letter as a request for a review of the permanent disqualification from the program and the eligibility for a civil money penalty for ZS Food Mart, located at 3719 Lockwood Dr., Houston, TX 77026. The letter notifying my client of the permanent disqualification was dated July 6, 2020. It was signed by Sanela Ocanovic, Section Chief, Retailer Operations Division, USDA, Food and Nutrition Service, Supplemental Nutrition Assistance Program. A Power of Attorney authorizing this law firm to act on behalf of ZS Food Mart is included with this letter.

ZS Food Mart was permanently disqualified for trafficking and not afforded the opportunity to pay a Civil Money Penalty (CMP) due to an alleged lack of an established and implemented effective compliance policy and prevention program regarding violations of the Supplemental Nutrition Assistance Program. However, ZS Food Mart did in fact have such policies and programs in place.

1

**A.R. 301**

Pursuant to 7 CFR Section 279.3, supporting information with respect to this request will be filed at a later date.

Respectfully Submitted,

Clyde Burleson
Burleson & Craig, P.L.L.C.
SBN: 00796278
1533 W. Alabama, Ste. 100
Houston, TX 77006
Tel: (713) 526-2226
Fax: (713) 526-3787
clyde@burlesoncraig.com
Attorney for ZS Food Mart

2

**A.R. 302**

STATE OF TEXAS    §
         §
         §
COUNTY OF HARRIS   §

## POWER OF ATTORNEY

I, Bashir A. Shaikh, on behalf of Z S Food Mart, hereby appoint Clyde W. Burleson, P.C. and its employees as Agent and attorney acting on behalf of my entity for the following purposes:

1. To discuss my Supplemental Nutrition Assistance Program and Electronic Benefit Transfer transactions.

2. To provide information as requested for purposes of my case and/or accounts and/or application and/or permit(s).

I grant the above named AGENT full power to substitute one or more attorneys or other representatives to carry out the powers and duties specified above.

_____
Bashir A. Shaikh
Z S Food Mart

Before me, the undersigned authority, on this _23rd_ day of _June_____, 2020, the person whose name is signed to the foregoing affidavit personally appeared and, duly sworn by me, states under oath that he or she has read the affidavit, and that all the facts therein set forth are true and correct.



LAUREN NEELY
Notary Public, State of Texas
Comm Expires 11-14-2022
Notary ID 130026540

_____
Notary Public, State of Texas

5

**A.R. 303**

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PRIORITY
★ MAIL ★

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

FROM:

Clyde W. Burleson, P.C.
1533 W. Alabama
Houston, TX 77006

TO:

Chief
Administrative Review Branch
USDA, FNS
1320 Braddock Place, 5th Flaw
Alexandria, VA 22314

To schedule free
Package Pickup,
scan the QR code.



USPS.COM/PICKUP

UNITED STATES
POSTAL SERVICE®

P

US POSTAGE PAID
$7.75

Origin: 77006
07/17/20
4813820026-45

Retail

PRIORITY MAIL 2-DAY®

0 Lb 2.00 Oz

1006

C029

EXPECTED DELIVERY DAY: 07/20/20

SHIP
TO:
1320 BRADDOCK PL
ALEXANDRIA VA 22314-1692

USPS TRACKING®NUMBER

9505 5104 4884 0199 2665 96

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

PS00000 1000014

**A.R. 304**

 **United States Department of Agriculture**
Food and Nutrition Service
Supplemental Nutrition Assistance Program

Delivery Tracking Number: 1Z09YV302994306949                    July 27, 2020

Clyde Burleson
Clyde W Burleson, P.C.
1533 W. Alabama Suite 100
Houston, TX 77006

RE:  Naghma B Shaikh, BASHIR SHAIKH
     ZS FOOD MART
     3719 LOCKWOOD
     HOUSTON, TX 77026

Dear Counselor,

The Food and Nutrition Service has received your timely request for administrative review of the adverse action taken against ZS FOOD MART regarding its participation in the Supplemental Nutrition Assistance Program (SNAP). The case number is C0230530.

If your request for review included information or documentation to support your position, then you are under no obligation to provide anything else. However, you are welcome to submit additional information or evidence to support your request. You may e-mail supporting information to lorie.conneen@usda.gov or send it by mail to the address below. This information must be e-mailed or postmarked by August 17, 2020. The administrative review will begin only after the time to submit additional information has passed.

To meet the minimum information requirement, you may reference any previous correspondence with the Retailer Operations Division, all of which will be forwarded to me as part of the administrative review process. If you choose not to send additional information or documentation and your request for administrative review did not include the reason(s) why you think a review is warranted, a review cannot be conducted. In that case, the adverse action taken by the Retailer Operations Division will be final.

If the adverse action was an application denial or permanent disqualification for trafficking, the store cannot be authorized to accept SNAP benefits during the administrative review process. For all other disqualification actions or withdrawals, the store will remain authorized pending the outcome of the review. A Final Agency Decision will be sent to you when the review is complete.

Sincerely,

*Lorie L. Conneen*

Lorie Conneen
Administrative Review Officer
1320 Braddock Place, 5th Floor
Alexandria, VA 22314
Phone: (703) 305-2817
Email: lorie.conneen@usda.gov

cc: Appellant

USDA is an Equal Opportunity Provider, Employer and Lender

**A.R. 305**

## Gary Amaya

**From:** UPS Quantum View <pkginfo@ups.com>
**Sent:** Tuesday, July 28, 2020 1:15 PM
**To:** ALFRESCO@FIELDDATATECH.COM
**Subject:** UPS Delivery Notification, Tracking Number 1Z09YV302994306949



**Hello, your package has been delivered.**

**Delivery Date:** Tuesday, 07/28/2020
**Delivery Time:** 12:13 PM
**Left At:** FRONT DESK
**Signed by:** BURLESON

| Set Delivery Instructions | Manage Preferences | View Delivery Planner |

### USDA CNPP BH

| | |
|---|---|
| **Tracking Number:** | 1Z09YV302994306949 |
| **Ship To:** | CLYDE W BURLESON, P.C.<br>1533 W. ALABAMA<br>SUITE 100<br>HOUSTON, TX 770064105<br>US |
| **Number of Packages:** | 1 |
| **UPS Service:** | UPS Next Day Air Saver® |
| **Package Weight:** | 0.0 LBS |
| **Reference Number:** | ZS FOOD MART |
| **Reference Number:** | C0230530 ATT ACK LC |

1

**A.R. 306**

| | |
|---|---|
| **From:** | Clyde Burleson |
| **To:** | Conneen, Lorie - FNS |
| **Subject:** | Supplemental Evidence Z S Food Mart (C0230530) |
| **Date:** | Monday, August 17, 2020 4:59:06 PM |
| **Attachments:** | Supplemental Evidence Z S Food Mart final.pdf |

Ms. Conneen:

Attached, please find supplemental information and evidence related to ZS Food Mart.

If you have any questions or require additional information, please let me know.

Thank you.

Clyde

Clyde Burleson
**Clyde W. Burleson, P.C.**
1533 W. Alabama, Ste. 100
Houston, TX 77006
Tel: (713) 526-2226 Ext. 721
Direct: (713) 351-0721
Fax: (713) 526-3787

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications
Privacy Act, 18 U.S.C. 2510-2521, 2701-2710 is confidential and may be legally privileged.
If you are not the intended recipient, you are hereby notified that any retention, dissemination,
distribution, or copying of this communication is strictly prohibited. Please reply to the sender
that you have received the message in error, then delete it.

**A.R. 307**

# Clyde W. Burleson, P.C.

1533 W. ALABAMA, STE. 100
HOUSTON, TX 77006
TELEPHONE: (713) 526-2226
FACSIMILE: (713) 526-3787

August 17, 2020

Lorie Conneen
Administrative Review Officer
*Via email: lorie.conneen@usda.com*

RE:    Additional Information or Evidence
        Naghma B. Shaikh, Bashir Shaikh
        ZS Food Mart
        3719 Lockwood
        Houston, Texas 77026

Dear Ms. Conneen:

ZS Food Mart was permanently disqualified from participation in the Supplemental Nutrition Assistance Program (SNAP) due to alleged trafficking, and was not afforded the opportunity to pay a Civil Money Penalty (CMP) due to an alleged lack of an established and implemented effective compliance policy and prevention program regarding violations of the Supplemental Nutrition Assistance Program. However, ZS Food Mart did in fact have such policies and programs in place. All employees hired by the business were required to meet with Mr. Shaikh prior to starting their first shift. At that meeting, Mr. Shaikh personally discussed the SNAP regulations and guidelines, as provided by the Food and Nutrition Service (FNS).

The owner of ZS Food Mart was not aware of, did not benefit from, and was not in any way involved in the conduct and/or approval of trafficking violations.

The area where ZS Food Mart is located is economically disadvantaged and has a high population density. There is only one other food store location within a one-mile radius of ZS Food Mart that accepts SNAP benefits. This is important because ZS Food Mart rings numerous SNAP transactions during each day of operation. It is unlikely that the residents of the area that surrounds

1

**A.R. 308**

ZS Food Mart will be able to travel, by public transportation or on their own, with such ease to a store that is further away from them.

Attached, I have included sample receipts demonstrating the number of SNAP transactions ZS Food Mart processes and several pictures of the store and the surrounding area. More receipts can be provided if it aids in your consideration of this matter.

Due to these circumstances, ZS Food Mart requests that it be considered for a civil money penalty.

Respectfully Submitted,

*Clyde Burleson*

Clyde Burleson
Clyde W. Burleson, P.C.
SBN: 00796278
1533 W. Alabama, Ste. 100
Houston, TX 77006
Tel: (713) 526-2226
Fax: (713) 526-3787
clyde@burlesoncraig.com
Attorney for ZS Food Mart

2

**A.R. 309**







A.R. 312

## ZS FOOD MART



A.R. 313

NEIGHBORHOOD BEHIND ZS FOOD MART



**A.R. 314**

**United States
Department of
Agriculture**



Food and
Nutrition
Service

Administrative
Review Branch
Room 5042

1320 Braddock
Place

Alexandria, VA
22314-1649

Phone:
(703) 305-2817

Lorie.Conneen@
usda.gov

September 2, 2020

Clyde Burleson
Clyde W Burleson, P.C.
1533 W. Alabama Suite 100
Houston, TX 77006

RE:   Naghma B Shaikh, Bashir Shaikh
        ZS Food Mart
        3719 Lockwood
        Houston, TX 77026
        Case Number C0230530

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA),
Food and Nutrition Service (FNS), in response to your request for administrative review
postmarked July 17, 2020, filed on behalf of ZS Food Mart and its owners of record,
Naghma B. Shaikh and Bashir Shaikh.  Also included therein is a statement regarding
relevant rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a finding that a
permanent disqualification from participating as an authorized retailer in the Supplemental
Nutrition Assistance Program was properly imposed against ZS Food Mart by the Retailer
Operations Division of FNS.

Sincerely,

LORIE L. CONNEEN
Administrative Review Officer

Enclosure – Final Agency Decision

USDA is an Equal Opportunity Provider, Employer, and Lender

**A.R. 315**

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**

ZS Food Mart,

Appellant,

v.                                                    Case Number: C0230530

Retailer Operations Division,

Respondent.

### FINAL AGENCY DECISION

It is the decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS), that there is sufficient evidence to support a finding that a permanent disqualification from participation as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP) was properly imposed against ZS Food Mart (hereinafter "ZS Food Mart" or "Appellant") by the Retailer Operations Division of FNS.

### ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with 7 CFR § 278.6(e)(1)(i) in its administration of the SNAP, when it imposed a permanent disqualification against ZS Food Mart.

### AUTHORITY

7 U.S.C. 2023 and its implementing regulations at 7 CFR § 279.1 provide that "[A] food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS.

### CASE CHRONOLOGY

In a letter dated June 12, 2020, the Retailer Operations Division informed the Appellant that ZS Food Mart was in violation of the terms and conditions of the SNAP regulations, 7 CFR § 270 – 282, based on EBT SNAP benefit transactions that "establish clear and repetitive patterns of unusual, irregular, and inexplicable SNAP activity for your type of firm." The letter also noted that the Appellant could request a trafficking civil money penalty (CMP) in lieu of a permanent disqualification within 10 days of receipt under the conditions specified in 7 CFR § 278.6(i).

**A.R. 316**

In a response to the Retailer Operations Division of June 23, 2020, the Appellant, through counsel, replied to the charges therein requesting the imposition of a civil money penalty in lieu of a permanent SNAP disqualification. The firm meets the criteria for a civil money penalty as outlined in the SNAP regulations. The Appellant has been open since 2003. Since the beginning of its operations, the Appellant had trained its employees regarding SNAP benefits. Prior to the violations alleged in the charge letter, all store employees were required to meet with owners and/or managers and were trained on the proper use of SNAP benefits and the store's obligations under the SNAP before beginning their first shift. Prior to the charge letter, there have not been any warnings or any advertisements of violations by FNS. This period of almost 17 years with no issues is evidence that the training program was effective and working. The Appellant is located in an economically disadvantaged and densely populated area. There are no other food store locations within an approximately one-mile radius of the Appellant that accept SNAP. A SNAP disqualification will harm the residents of the area that rely on SNAP at ZS Food Mart as it will further limit their access to affordable and nutritious food. Due to the surrounding circumstances, the Appellant should be eligible for a civil money penalty or in the alternative disqualification for one year at most. In support of its contentions, the Appellant submitted a signed and notarized affidavit of the store owner, signed letter of representation, google map of area surrounding subject firm, a photo of the outside of ZS Food Mart, and an aerial photo of the neighborhood located behind the subject firm.

After considering the Appellant's reply and the evidence in the case, the Retailer Operations Division issued a determination letter dated July 6, 2020, informing the Appellant that ZS Food Mart was being permanently disqualified from participation in the SNAP in accordance with 7 CFR § 278.6(e)(1) for trafficking violations. The letter also stated that the Appellant was not eligible for a trafficking civil money penalty (CMP) as the Appellant did not submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent violations of the SNAP.

In a letter postmarked July 17, 2020, the Appellant, through counsel, requested an administrative review of the Retailer Operations Division's decision to permanently disqualify the firm from participation in the SNAP. FNS granted the Appellant's request for administrative review by letter dated July 27, 2020. In an email correspondence of August 17, 2020, the Appellant, through counsel, provided additional information in support of the request for administrative review.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

**A.R. 317**

## CONTROLLING LAW

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, amended, 7 U.S.C. § 2021 and 278 of Title 7 of the Code of Federal Regulations (CFR). 7 U.S.C. § 2021, Part 278.6(a) and Part 278.6(e)(1)(i) of the Regulations establish the authority upon which a permanent disqualification may be imposed upon a retail food store or wholesale food concern. There also exist FNS policy memoranda and clarification letters which further explain the conditions necessary in order to permanently disqualify retail stores.

7 U.S.C. § 2021(b)(3)(B) states, inter alia:

> ... a disqualification under subsection (a) shall be ... permanent upon ... the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern or a finding of the unauthorized redemption, use, transfer, acquisition, alteration, or possession of EBT cards ...

7 CFR § 278.6(a) states, inter alia:

> FNS may disqualify any authorized retail food store ... if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system ... [Emphasis added].

7 CFR § 278.6(e)(1)(i) states:

> Disqualify a firm permanently if:  Personnel of the firm have trafficked as defined in § 271.2.

7 CFR § 271.2 states, inter alia:

> Trafficking means...The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone...

7 CFR § 278.6(f)(1) states, inter alia:

> A civil money penalty for hardship to SNAP households may not be imposed in lieu of a permanent disqualification.

7 CFR § 278.6(i) states, inter alia:

**A.R. 318**

FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking as defined in § 271.2 if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations ...

7 CFR § 278.6(b)(2) states, inter alia:

(ii) Firms that request consideration of a civil money penalty in lieu of a permanent disqualification for trafficking shall have the opportunity to submit to FNS information and evidence as specified in § 278.6(i), that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i). This information and evidence shall be submitted within 10 days, as specified in § 278.6(b)(1). [Emphasis added].

(iii) If a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified in § 278.6(b)(1), the firm shall not be eligible for such penalty. [Emphasis added].

## SUMMARY OF CHARGES

The Appellant was charged and determined to be trafficking based on an analysis of EBT transaction data from November 2019 through April 2020. This involved the following SNAP transactions patterns which are indicative of trafficking:

- There were multiple transactions made from the accounts of individual SNAP households within a set time period; and
- There were EBT transactions conducted that are large based on the observed store characteristics and recorded food stock.

The issue in this review is whether, through a preponderance of evidence, it is more likely true than not true that questionable transactions were the result of trafficking.

## APPELLANT'S CONTENTIONS

The following represents a brief summary of the Appellant's contentions in this matter. Please be assured, however, that in reaching a decision, full attention and consideration was given to all contentions presented, including any not specifically recapitulated or specifically referenced herein.

In the reply to the charge letter, in the administrative review request, and in subsequent correspondence, the Appellant, through counsel, stated the following summarized contentions, in relevant part:

- The Appellant requests the imposition of a civil money penalty in lieu of a permanent SNAP disqualification. The firm meets the criteria for a civil money penalty as outlined

**A.R. 319**

in the SNAP regulations as it had established and implemented an effective compliance policy and prevention program regarding violations of the SNAP.  The Appellant has been open since 2003.  Since the beginning of its operations, the Appellant had trained its employees regarding SNAP benefits.  Prior to the violations alleged in the charge letter, all store employees were required to meet with owners and/or managers and were trained on the proper use of SNAP benefits and the store's obligations under the SNAP before beginning their first shift.  The owner of ZS Food Mart was not aware of, did not benefit from, and was not in any way involved in the conduct and/or approval of trafficking violations.

- Prior to the issuance of the charge letter, there have not been any warnings or any advertisements of violations by FNS.  This period of almost 17 years with no issues is evidence that the training program was effective and working.
- The Appellant is located in an economically disadvantaged and densely populated area.  There are no other food store locations within an approximately one-mile radius of the Appellant that accept SNAP.  This is important because ZS Food Mart rings numerous SNAP transactions during each day of operation.  It is unlikely that the residents of the surrounding area will be able to travel, by public transportation or on their own, with such ease to a store that is further away from them.  A SNAP disqualification will harm the residents of the area that rely on SNAP at ZS Food Mart as it will further limit their access to affordable and nutritious food.
- Due to the surrounding circumstances, the Appellant should be eligible for a civil money penalty or in the alternative disqualification for one year at most.

In support of these contentions, the Appellant, through counsel, submitted the following information for review:

- Signed and notarized affidavit of the store owner;
- Signed letter of representation;
- Google map of area surrounding ZS Food Mart;
- Photo of the outside of ZS Food Mart;
- Aerial photo of the neighborhood located behind ZS Food Mart; and
- Seven (7) sample register receipts dated June 18, 2020; June 2_, 2020 (day date illegible), June 23, 2020, June 27, 1010, June 28, 2020, July 7, 2020, and July 8, 2020.

### ANALYSIS AND FINDINGS

#### SNAP Authorization

FNS authorized ZS Food Mart for participation in the SNAP on January 31, 2019.  During the review period of November 2019 through April 2020, ZS Food Mart was classified as a convenience store.  The owner signed a SNAP application for the store and acknowledged he was aware of the SNAP regulations and understood those regulations.  That application included a certification and confirmation that the owner would "accept responsibility on behalf of the firm for violations of the SNAP regulations, including those committed by any of the firm's employees, paid or unpaid, new, full-time or part-time."  The violations listed on this certification include accepting SNAP benefits in exchange for cash, otherwise known as

trafficking, and other violations such as accepting SNAP benefits as repayment on credit accounts or in exchange for ineligible items.

## Store Visit Observations

The case file indicates that in reaching a disqualification determination, the Retailer Operations Division considered information obtained during a September 28, 2019 store visit conducted by a FNS contractor to observe the nature and scope of the firm's operation, stock, and facilities. This information obtained from the store visit was also used to ascertain if there were justifiable explanations for the firm's irregular SNAP transactions. The store visit report and photographs documented the following store size, description, and characteristics:

- Approximately 840 square feet in size with approximately 21 square feet of storage outside of public view which stocked predominantly non-food items;
- Had storage coolers/freezers which stocked predominantly non-staple foods;
- No shopping carts or hand-held baskets available for customer use;
- One cash register and one EBT point-of-sale (POS) device for use in ringing-up SNAP transactions;
- One small checkout counter area surrounded by a Plexiglas barrier with limited check-out counter space;
- Had optical scanners;
- No signs posted or flyers available advertising the availability of bulk foods offered at a discounted rate to include meats in bulk, foods sold by the case, and grocery package deals;
- No meat/seafood specials or bundles or fruit/vegetable boxes that might sell for high prices;
- No evidence of a wholesale business such as posted prices or separate entrances for wholesale customers;
- Did not have a special pricing structure such as prices ending in $x.x9 or $x.00;
- Transaction totals are not rounded up or down at the checkout counter;
- Telephone and on-line orders were not taken and delivery was not offered;
- Had empty/broken/unused coolers/freezers;
- The four most expensive staple food items in stock were Waaks sausage at $9.99 per 40 ounces (1 unit in stock); Sodas at $6.99 per 12-pack; Jack Links jerky at $6.99 per 3.25 ounces (6 units in stock); and Folgers coffee at $6.49 per 11.5 ounces (2 units in stock);
- No fresh or frozen meats, poultry, or seafood;
- Frozen foods included a minimal amount and variety of single-serve burritos, burgers/ sandwiches, and pizza;
- No kitchen and hot foods were not sold;
- No deli and deli meats and cheeses were not sold by the pound;
- Had a microwave for customer use;
- Meat items included units of canned fish, eggs, sausage, packaged lunch meat, meat jerky, and canned/potted meat;
- Dairy included milk, margarine, sour cream, and cheese;
- No fresh produce stock;

- Other staple foods available for purchase included such items as juice, pasta, rice, cereal, baking mix, loaf bread, corn meal, tortillas, and canned goods;
- Much of the remaining food stock consisted of accessory foods such as candy, carbonated and non-carbonated drinks, snack foods, ice cream, and condiments; and
- Ineligible nonfood items included tobacco products, lottery tickets, health and beauty aids, paper products, household cleaning supplies, alcohol, automotive supplies, housewares, mobile phones/phone cards, gift items/souvenirs, pet food, and charcoal.

The available inventory of SNAP eligible food at the time of the store visit showed food stock that would be typical of a convenience store, where households normally purchase a limited number of items. The SNAP eligible food stocked by the store was generally of a low dollar value, consisting mainly of inexpensive canned and packaged goods, snack foods, single-serving food items and accessory food items. There was little indication that SNAP households would be inclined to regularly visit the store to purchase large quantities of groceries. Given the available inventory and the store's characteristics, this review could find no reason why the Appellant firm's SNAP redemption patterns differed so significantly from those of similar sized competitors.

## Charge Letter Attachments

On review, the investigative materials provided by the Retailer Operations Division, including computer printouts of transaction data available from Federal records, store visit observations, information regarding area competitor firms, and household shopping patterns, were analyzed.

The Retailer Operations Division presented a case that the Appellant trafficked SNAP benefits. Each Attachment furnished with the charge letter represents the questionable and unusual patterns of SNAP transactions indicative of trafficking which were conducted at the Appellant during the review period. A singular transaction could appear in more than one Attachment as it can meet the criteria for several different types of flags. As patterns of unusual transactions appear across multiple Attachments the case of trafficking becomes more convincing.

## Repeat Transactions by the Same Household (Charge Letter Attachment 1)

This charge letter Attachment documents 21 sets of transactions (53 total transactions) totaling $2,106.57 in SNAP benefits to meet the parameters of this scan. These transactions were conducted by 17 different SNAP households. Multiple transactions conducted by the same household account within a short period of time is a method which violating stores use to avoid single high dollar transactions that cannot be supported by a retailer's inventory and structure.

Although it is not uncommon for customers to have more than one transaction per day and there are no limits on the number of times EBT cards may be used or the amount of eligible foods that may be purchased, it is not common that such multiple transactions are for large dollar amounts. The SNAP transactions noted in the charge letter are questionable not because they exceed any limits for use, but rather because they display characteristics of use inconsistent with the nature and extent of the Appellant's stock and facilities and are therefore, indicative of trafficking.

**A.R. 322**

The report and photographs from the store visit offer no explanation as to why SNAP customers would routinely shop at ZS Food Mart multiple times during a short period or purchase such a large volume of items, there being no great variety of products, price advantage, profusion of large packages, or significant bulk items or food cases for sale. The second, third, fourth, and fifth transactions in each set are too large to consist of forgotten items. In addition, there was a small checkout area with one cash register for food purchases and one EBT POS device. There were no shopping carts or hand-held baskets at the time of the store visit available to customers for transporting food within the store. There were no conveyor belts to expedite high dollar or rapid consecutive purchases.

The Appellant contends that it is located in an economically disadvantaged and densely populated area. There are no other food store locations within an approximately one-mile radius of the Appellant that accept SNAP. This is important because ZS Food Mart rings numerous SNAP transactions during each day of operation. It is unlikely that the residents of the surrounding area will be able to travel, by public transportation or on their own, with such ease to a store that is further away from them.

It is recognized that sometimes a firm may have unusual transaction patterns due to a recipient's lack of access to other SNAP authorized stores. However, there are 13 SNAP authorized retailers, including a medium grocery store, located within a 1.0 mile radius of ZS Food Mart that can meet the nutritional needs of SNAP customers. Some of these authorized SNAP stores are larger than ZS Food Mart and offer a greater quantity and variety of food products at comparable or better prices as compared to the subject store.

The record indicates that SNAP customers who shopped at ZS Food Mart during the review period also shopped at other area grocery stores and, therefore, transportation to other stores is not an issue for these customers. Therefore, lack of access to other authorized stores or the availability of other food stores does not appear to be an explanation for the Appellant's abnormally high SNAP transaction amounts conducted within a short timeframe of each other.

No banking records or Federal or state sales tax forms were advanced to support that the Appellant was not trafficking. The sample register tapes (7 total) advanced for review are not itemized (i.e., do not list the individual foods/items purchased) and are dated outside of the review period. Therefore, they have no bearing on this case. No vendor invoices were provided to support that the Appellant stocked adequate eligible foods to cover its SNAP redemptions for the review period. No documentation was provided that validates that the Appellant did not traffick SNAP benefits. The Appellant has the burden to provide relevant evidence to rebut the trafficking charges. This burden has not been met.

Unfortunately, the Appellant has not provided any evidence to show that the transactions listed in this Attachment were legitimate purchases of eligible foods. The Appellant provided no arguments or evidence to substantiate its claim that trafficking did not occur.

### Excessively Large Transactions (Charge Letter Attachment 2)

This charge letter Attachment documents 110 SNAP transactions, as large as $89.41, that total $5,171.80. These large transaction amounts are not consistent with the store's observed

**A.R. 323**

characteristics and food inventory. The frequency of high dollar purchases in the review period calls into question the legitimacy of these transactions.

The food stock and facilities of the Appellant as reported in the store visit documentation do not appear sufficient to provide for all of one's food needs. People generally do not spend large sums at such stores. They usually stop at convenience stores to pick up a few staple food items, such as bread, milk, or a can or two of food that they may consider are not worth a trip to the supermarket to purchase. It is rare for a convenience store such as the Appellant firm to have purchases like those included in Attachment 2 to the charge letter.

The FNS store visit report and photos show that ZS Food Mart offers a minimal stock of SNAP eligible foods with no fresh or frozen meats, poultry, or seafood, no fresh produce, and a lack of an abundant depth and breadth of staple foods. The store visit evidence also shows only a few high priced eligible foods in stock (of which three out of four had minimal quantities) that would account for these large amounts and no evidence of a price advantage or custom or special services rendered at the subject store that are not offered at other authorized SNAP stores in the area. These large transaction amounts are not consistent with the Appellant store's inventory.

The average SNAP transaction included in this Attachment is $47.02. The large transactions documented in this Attachment are not consistent with a convenience store in Harris County, Texas. During the review period, the average transaction amount for a convenience store in Harris County was $7.89. The average transaction in this Attachment is more than 5.5 times larger than the average purchase amount for this store type. Even the smallest transaction cited in the charge letter had an amount which is more than four (4) times higher than the average SNAP purchase amount for Harris County. There is no evidence that the Appellant firm would be likely to have SNAP redemption patterns that differ considerably from similar sized competitors.

While the Appellant firm may be located in a neighborhood with households that qualify for SNAP benefits, these factors are not an indication that questionable transactions would be occurring at any given store. The subject store shows unusual transaction patterns that are not displayed in other similarly stocked stores. If specific household needs are causing these questionable transactions at the subject store, it would be expected that similar patterns would also present themselves at nearby firms as well. But this is simply not the case.

The Retailer Operations Division compared the review period SNAP transaction activity of ZS Food Mart to that of two (2) authorized convenience stores located within 0.61 miles of the subject firm. The comparison convenience stores sell a comparable or larger variety of staple food items at comparable or better prices as compared to ZS Food Mart. During the review period, the Appellant had a significantly higher number of ALERT flagged transactions (i.e., multiple transactions made from individual SNAP households within a set time period and SNAP transactions that are large based on the observed store characteristics and recorded food stock) as compared to the noted convenience stores. In addition, the Appellant's average transaction dollar amount, total purchase transaction count, and total dollar volume were unusually high as compared to the noted area stores. These are all indicators that trafficking is more likely than not occurring at ZS Food Mart.

The case record documents that the Retailer Operations Division conducted a detailed analysis of three SNAP households identified in the charge letter to analyze their shopping patterns at ZS Food Mart compared to their shopping patterns at other SNAP authorized stores. Each of these households had access to, and shopped at larger stores including super stores and/or supermarkets. It is obvious that these SNAP households had transportation available to them to reach these other authorized stores. However, despite this access to better stocked stores, these sampled households conducted excessively large transactions at ZS Food Mart often within 24 hours of shopping at the larger stores where they conducted much smaller SNAP purchases. It is highly unlikely that a convenience store with minimal staple foods would have legitimate SNAP transactions greater than these larger and better stocked stores.

The store's layout, infrastructure, and food inventory do not support a high percentage of transactions markedly exceeding those of similar type stores. In addition to the statistical irregularity of such high dollar transactions, the limited availability of counter space for checking out and the lack of shopping carts and hand-held baskets support the Retailer Operations Division's determination. It is not plausible that the store's customers are carrying large amounts of food around the store without the benefit of shopping carts and/or hand-held baskets. Customers purchasing such large quantities of food items would have to hold them in their arms, or enlist the help of others while shopping.

The USDA employs a computerized fraud detection tool to identify EBT transactions that form patterns that have characteristics indicative of trafficking. However, this tool does not, by itself, determine or conclude that trafficking has occurred. The Retailer Operations Division analyzes the transaction data and patterns along with other documentation such as, information from the onsite store visit report including photographs of stock and the store layout, an analysis of recipient shopping behavior, and comparisons with similar store types in local area, to render a determination as to whether or not the questionable transaction patterns were, more likely than not, the result of trafficking. The regulations at 7 CFR § 278.6(a) state that FNS may disqualify any authorized retail food store if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, and that such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through, inconsistent redemption data, and evidence obtained through a transaction report under an electronic benefit transfer system.

Based on the discussion above and in the absence of credible evidence for such transaction patterns, a conclusion can be drawn through a preponderance of evidence that the "unusual, irregular, and inexplicable" transactions and patterns cited in the letter of charges evidence trafficking as the most likely explanation. Nevertheless, transactions having such characteristics do sometimes have valid explanations that support that they were the result of legitimate purchases of eligible food items, and this is why opportunities are afforded to charged retailers to explain the questionable transactions cited. In this case, however, the Retailer Operations determined that the Appellant's contentions did not outweigh the evidence. Assertions that the firm has not violated program regulations, by themselves and without supporting evidence and rationale, do not constitute valid grounds for dismissal of the current charges of violations. As noted herein, the Appellant has the burden of providing credible, relevant evidence, which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than not true. This burden has not been met.

**A.R. 325**

### No Prior Violations

The Appellant contends that prior to the issuance of the charge letter, there have not been any warnings or any advertisements of violations by FNS. However, a record of participation in the SNAP with no previously documented instance of violations does not constitute valid grounds for dismissal of the current charges of violations or for mitigating the impact of those charges.

### Customer Hardship

With regard to the Appellant's contentions that a SNAP disqualification will impose a hardship on area SNAP customers, 7 CFR § 278.6(f) of the SNAP regulations provides for civil money penalty assessments in cases where disqualification would cause "hardship" to SNAP households because of the unavailability of a comparable participating food store in the area to meet their needs. However, this regulation also sets forth the following specific exception to such assessments there under: "A civil money penalty for hardship to SNAP households may not be imposed in lieu of a permanent disqualification". Therefore, since this case involves a permanent disqualification action, the civil money penalty provision is not applicable to the present case.

### Alternative Penalty

With regard to the Appellant's contentions that due to the surrounding circumstances, the Appellant should be eligible for an alternative disqualification for one year at most, the Food and Nutrition Act of 2008, at § 2021, does not allow for discretion in determining sanctions for trafficking and is specific in its requirement that "… a disqualification … shall be permanent upon … the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern or a finding of the unauthorized redemption, use, transfer, acquisition, alteration, or possession of EBT cards …". In keeping with this legislative mandate, 7 CFR § 278.6(e)(1)(i) of the SNAP regulations states that FNS shall disqualify a firm permanently if personnel of the firm have trafficked.

### CIVIL MONEY PENALTY

In the June 12, 2020 charge letter the Appellant was informed by the Retailer Operations Division that, under certain conditions, FNS may impose a civil money penalty (CMP) of up to $59,000 in lieu of permanent disqualification of a firm for trafficking. Per Section 278.6(i) of the SNAP regulations, four criteria must be met in order to be considered for a trafficking civil money penalty. If requesting a trafficking CMP, an Appellant must meet each of the four criteria listed and provide the documentation as specified within ten days of the Appellant's receipt of their charge letter. As specified in 7 CFR § 278.6(i), in determining the minimum standards of eligibility of a firm for a civil money penalty in lieu of trafficking, the firm shall, at a minimum, establish by substantial evidence its fulfillment of each of the following four criteria:

Criterion 1. The firm shall have developed an effective compliance policy as specified in 7 CFR § 278.6(i)(1);

**A.R. 326**

Criterion 2.  The firm shall establish that both its compliance policy and program were in operation at the location where the violations(s) occurred prior to the occurrence of violations cited in the charge letter;

Criterion 3.  The firm had developed and instituted an effective personnel training program as specified in 7 CFR § 278.6(i)(2); and

Criterion 4.  Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations.

If the Appellant's request for a trafficking CMP and the required documentation are not submitted on time, it will lose its right for any further consideration for a trafficking CMP.  The SNAP regulations are specific at 7 CFR §278.6(b)(2)(iii) that "if a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified, the firm shall not be eligible for such a penalty".  The regulations do not provide the agency discretion to extend the time within which documentation and evidence in support of a trafficking civil money penalty may be submitted.

The Appellant requests the imposition of a civil money penalty in lieu of a permanent SNAP disqualification.  The firm meets the criteria for a civil money penalty as outlined in the SNAP regulations as it had established and implemented an effective compliance policy and prevention program regarding violations of the SNAP.  Since the beginning of its operations, the Appellant had trained its employees regarding SNAP benefits.  Prior to the violations alleged in the charge letter, all store employees were required to meet with owners and/or managers and were trained on the proper use of SNAP benefits and the store's obligations under the SNAP before beginning their first shift.  The owner of ZS Food Mart was not aware of, did not benefit from, and was not in any way involved in the conduct and/or approval of trafficking violations.  As the Appellant had not been cited for any prior SNAP violations, this is evidence that the training program was effective and working.

The Appellant provided no supporting documentation in support of its request for the imposition of a CMP in lieu of SNAP disqualification.  The Retailer Operations Division determined that the Appellant was not eligible for a trafficking civil money penalty in lieu of a disqualification under 7 CFR § 278.6(i) because the Appellant failed to submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent SNAP violations.  For example:

- There is no contemporary documentary evidence that employees were provided SNAP compliance training on their initial hire date or at any time during their employment.
- There is no contemporary documentary evidence that employees were required to watch the FNS training video and review the SNAP rules.
- There is no contemporary documentary evidence of training agendas, training logs, signed training certificates or other evidence of employee training.

- There is no indication that quizzes or tests were conducted to insure that the employees understood any training that was provided to them.
- There is no contemporary documentary evidence that the firm's ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of the trafficking violations. In determining whether store ownership benefited from trafficking of SNAP benefits in which it was not directly involved, it is generally assumed that if EBT settlements are made to the store owner's account, the store owner had benefited from such transactions. The store employee, manager, or store owner involved in the trafficking transactions took cash out of the store's cash register and the benefits most likely went into the Appellant's bank account.

Therefore, the Retailer Operations Division's decision not to impose a civil money penalty in lieu of disqualification is sustained as appropriate pursuant to 7 CFR § 278.6(i).

## CONCLUSION

The Retailer Operations Division's analysis of the Appellant's EBT transaction record, upon which charges of violations are based, together with observations made during the store visit and an analysis of customer shopping behaviors, provide substantial evidence that questionable transactions during the focus period have characteristics and display patterns that are not consistent with legitimate sales of eligible food to SNAP benefit customers at a store of this type, size and makeup. Rather, the characteristics are indicative of illegal trafficking in program benefits. The Appellant's contentions do not outweigh this evidence.

The record has yielded no indication of error or discrepancy in the reported findings by the Retailer Operations Division that program benefits were accepted in exchange for cash or consideration other than eligible food. Therefore, based on a review of the evidence in this case, it is more likely true than not true that program violations did, in fact, occur as charged. Therefore, the decision to impose a permanent disqualification from participation in the SNAP against ZS Food Mart is sustained.

## RIGHTS AND REMEDIES

Your attention is called to Section 14 of the Food and Nutrition Act of 2008 (7 U.S.C. 2023) and to Section 279.7 of the Regulations (7 CFR § 279.7) with respect to your right to a judicial review of this determination. Please note that if a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which you reside or are engaged in business, or in any court of record of the State having competent jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

**A.R. 328**